STATE OF CONNECTICUT *v.* LARRY BUELL
(14166)

SHEA, CALLAHAN, GLASS, COVELLO, BORDEN,
BERDON and SANTANIELLO, Js.

---

Argued October 29, 1991—decision released March 17, 1992

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom were *Steven M. Sellers,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, and *Mary Elizabeth Baran,* assistant state's attorney, for the appellee (state).

GLASS, J. The defendant, Larry Buell, was charged by information with two counts of failure to appear in the first degree, in violation of General Statutes § 53a-172.[1] A jury trial commenced on March 21, 1990.

[1] "[General Statutes] Sec. 53a-172. FAILURE TO APPEAR IN THE FIRST DEGREE: CLASS D FELONY. (a) Any person who, while charged with the commission of a felony and while out on bail or released under other procedure of law, wilfully fails to appear when legally called according to the

The trial court, *Cretella, J.*, sua sponte, declared a mistrial on March 23, 1990, on the basis that defense counsel's representation of a state's witness, Rose Mumford, made it impossible for the trial to proceed. Thereafter, the defendant moved to dismiss the charges against him on the ground that further prosecution would violate the constitutional prohibition against double jeopardy. The trial court, *Damiani, J.*, denied the motion to dismiss. The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023. The sole question on appeal is whether the trial court improperly denied the defendant's motion to dismiss made on the ground that a retrial would subject him to double jeopardy, which is proscribed by the fifth amendment to the United States constitution. We conclude that further prosecution in the circumstances of this case would violate the prohibition against double jeopardy and, therefore, we reverse the judgment of the trial court.

The facts relevant to this appeal are as follows. From March 5 to March 7, 1990, the trial court conducted jury voir dire. The state's attorney read to two separate jury panels a list of the witnesses that the state intended to call. Mumford's name was not mentioned to either panel. The trial was scheduled to commence on March 21, 1990. On that date, prior to swearing in the jury, the trial court heard argument on three motions to quash subpoenas brought by defense counsel, John Williams. One of the motions concerned a subpoena served upon Mumford.[2] Williams, at that time, told the court that he represented Mumford.[3] Shortly

---

terms of his bail bond or promise to appear, is guilty of failure to appear in the first degree.

"(b) Failure to appear in the first degree is a class D felony."

[2] The remaining motions concerned subpoenas served on Williams' law partner, Sue Wise, and the defendant's mother, Ann Buell.

[3] The following colloquy transpired between the court and defense counsel:

"Mr. Williams: There are three motions to quash that have been filed, your Honor. One was filed this morning.

thereafter, during argument on the motions, the state's attorney indicated her opposition to Williams' representation of Mumford.[4] The court denied the defendant's motions to quash. The state then requested permission to add several names to the list of witnesses, including Mumford's. The court granted the state's request over the objection of defense counsel.[5] Thereafter, the jury was sworn.

The state presented the testimony of five witnesses to the jury on March 21 and 22, 1990.[6] On March 23, before the jury was brought into the courtroom, the state's attorney moved to disqualify Williams from

"The Court: Do you have the other one, the third one there? Do you have the third motion?

"Mr. Williams: Mr. Clerk?

"Mr. Williams: The first referred to a subpoena served upon Sue Wise. The second is a subpoena served on Ann Buell and *the third a subpoena served upon Rose Mumford, whom I represent.*

"The Court: All right." (Emphasis added.)

[4] The following colloquy transpired between the court and the state's attorney:

"Ms. Baran: Your Honor, I will cite to the court Connecticut General Statutes Section 52-144, which clearly articulates the form of a subpoena. And as the court is more than well aware, a subpoena is valid for sixty days subsequent to the date cited thereon. And, therefore, I would just state to the court that I think that Attorney Williams' argument with regard to these subpoenas is frivolous.

"The Court: Second ground?

"Ms. Baran: *The second ground, your Honor, is that I think Mr. Williams represented, much to my surprise, 'all of whom I represent' when he was referring to Rose Mumford, who is an independent witness."* (Emphasis added.)

[5] Defense counsel objected to the proposed addition of witnesses on the basis that the state had been ordered to disclose the names and addresses of all witnesses that it intended to call on the first day of jury selection. Defense counsel requested first, that the trial court order the state to provide the addresses of all witnesses that it intended to call, and second, that the court grant a continuance for defense counsel to investigate the additional witnesses. The court ordered the state to provide the witnesses' addresses but denied the motion for a continuance.

[6] The jury heard the testimony of Judge William Hadden, Minna Dew, Edward Kendall, Robert Sterling and David Schultz.

representing Mumford. The state's attorney claimed that she had first learned that Williams represented Mumford at the end of the day on March 22. She stated to the court, however, that she opposed a mistrial and recommended that the court appoint other counsel for Mumford. Williams countered that he had filed an appearance on behalf of Mumford with the clerk on March 21 and had personally served the appearance on the state's attorney. Williams informed the court that if called to testify, Mumford intended to exercise her right against self-incrimination. He further indicated that the state had been made aware that he represented Mumford on March 21, when he argued the motion to quash the state's subpoena to her.

After a recess, the trial court heard further argument concerning Williams' representation of Mumford. Williams argued that the court should hold a hearing, pursuant to *State* v. *Williams*, 203 Conn. 159, 523 A.2d 1284 (1987), and *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982), to determine whether the defendant and Mumford would make a knowing and intelligent waiver of their right to conflict free representation. Williams represented to the court that he had advised the defendant and Mumford of their rights and of the potential conflicts in dual representation, and that each was prepared to make such a waiver on the record. Despite Williams' assurances and the recommendation of the state's attorney that the court appoint other counsel for Mumford, the court declared a mistrial.

In reaching its conclusion that a mistrial was necessary, the trial court found "it highly improper to have defense counsel on the day of trial, March twenty one, file an appearance for a person known to be a state witness . . . ." The court found that Williams' representation of Mumford "pose[d] insurmountable problems" and made it "virtually impossible" for the case to proceed. The court stated that if Mumford were called to

testify, Williams would have to cross-examine his own client, which created "an unconscionable and impossible hurdle to surmount." The court went on to state that "[it was] with great reluctance" that it could not allow the case to proceed but that it found that Williams' actions had brought about the mistrial. The court concluded that it was "impossible" for the case to continue and, sua sponte, declared a mistrial. The defendant subsequently filed a motion to dismiss on the ground that a second prosecution would constitute double jeopardy. The trial court denied the motion to dismiss and this appeal followed.

On appeal, the defendant claims that the trial court improperly denied his motion to dismiss because the declaration of a mistrial without his consent based on his attorney's simultaneous representation of a state's witness was without manifest necessity. The defendant argues that because the trial court failed to consider the alternatives to a mistrial, the state has not demonstrated manifest necessity. Specifically, the defendant contends that the court should have conducted a hearing pursuant to State v. Williams, supra, and United States v. Curcio, supra, to determine whether the defendant and Mumford would waive their right to conflict free representation, or at the least, should have allowed a continuance to appoint new counsel for Mumford as the state's attorney had recommended. The state argues that the trial court thoroughly considered and rejected the proposed alternatives and that a mistrial was manifestly necessary to avoid compromising the fairness of the trial. Because the record indicates that the trial court was made aware before the jury was sworn that Williams represented Mumford, we conclude that there was no manifest necessity for the declaration of a mistrial.[7]

---

[7] Because our conclusion that there was no manifest necessity is based on events that occurred prior to the swearing in of the jury, we do not reach

"The fifth amendment to the United States constitution provides, in relevant part, 'nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb.' 'This clause, which is applicable to the states through the fourteenth amendment; *Benton* v. *Maryland,* 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); establishes the constitutional standards concerning the guarantee against double jeopardy. *Crist* v. *Bretz,* 437 U.S. 28, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978); *Benton* v. *Maryland,* supra, 795.' *State* v. *Roy,* 182 Conn. 382, 385, 438 A.2d 128 (1980); see *Arizona* v. *Washington,* 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)." *State* v. *Van Sant,* 198 Conn. 369, 376, 503 A.2d 557 (1986). Jeopardy attaches once the jury has been selected and sworn. Id.; see *Illinois* v. *Somerville,* 410 U.S. 458, 467, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973). The constitutional protection afforded by the double jeopardy clause includes the defendant's " 'valued right to have his trial completed by a particular tribunal.' *Arizona* v. *Washington,* supra." (Internal quotation marks omitted.) *State* v. *Van Sant,* supra.[8] This right is not absolute, however, and may in some cases be subordinated

the issue of whether, before the trial court declared a mistrial, it should have conducted a hearing to determine whether the defendant and Mumford would waive their right to conflict free representation. This court has previously recognized the importance of the trial court's consideration of the alternatives to a mistrial in determining whether manifest necessity existed. See *State* v. *Van Sant,* 198 Conn. 369, 381, 503 A.2d 557 (1986).

[8] In *Arizona* v. *Washington,* 434 U.S. 497, 503–504, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978), the United States Supreme Court set forth the reasons behind the constitutional protection of a criminal defendant's right to have his trial completed by a particular tribunal: "[A second prosecution] increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." The court stated further that "[t]he danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed," and that, therefore, "as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." Id., 505.

to "the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Arizona* v. *Washington,* supra, 505.

"In construing the double jeopardy clause of the United States constitution in the context of a declaration of a mistrial over a defendant's objection, the seminal decision is *United States* v. *Perez,* [22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824)]." *State* v. *Van Sant,* supra, 377. "Justice Story, writing for the United States Supreme Court in *Perez,* set forth standards for determining when to order a retrial after the declaration of a mistrial over the defendant's objection. He said: 'We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . .' *United States* v. *Perez,* supra, 580." *State* v. *Van Sant,* supra, 378. The United States Supreme Court has continued to adhere to the "manifest necessity" standard set forth in *Perez,* and has rejected "the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." *Illinois* v. *Somerville,* supra, 462; see also *United States* v. *Jorn,* 400 U.S. 470, 480, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). We have similarly eschewed a mechanical application of the manifest necessity standard. *State* v. *Van Sant,* supra, 379.

" 'The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection

of the defendant.' " Id., quoting *Arizona* v. *Washington,* supra. "With respect to construction of the terms 'manifest necessity,' a 'high degree' of 'necessity' is required before a conclusion may be reached that a mistrial is appropriate . . . ." *State* v. *Van Sant,* supra, quoting *Arizona* v. *Washington,* supra, 506–507. A trial judge must therefore engage in a "scrupulous exercise of judicial discretion"; *United States* v. *Jorn,* supra, 485; in order to "assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal." Id., 486. The duty of the trial court to exercise such discretion is not diminished by any contribution the litigants may arguably have made to the situation in which the court finds itself. Id., 485–86.

" 'A reviewing court looks for a manifest necessity by examining the entire record in the case without limiting itself to the actual findings of the trial court. . . .' " *State* v. *Van Sant,* supra. "It is the examination of the propriety of the trial court's action against the backdrop of the record that leads to the determination whether, in the context of a particular case, the mistrial declaration was proper." Id. Applying this standard of review to the present case, we conclude that the trial court was not warranted in declaring a mistrial.

The record reveals that Williams first brought his representation of Mumford to the attention of the trial court on March 21, 1990, the day the trial was scheduled to commence. At that time, Williams proffered three motions to quash subpoenas. In referring to a subpoena that the state had served on Mumford, Williams clearly stated that he represented her. The state's attorney remarked on Williams' statement shortly thereafter, indicating that she opposed his representation of Mumford. Much of the ensuing argument, however, concerned a subpoena that had been served on Williams'

law partner, Sue Wise. After the court denied all three motions, the state's attorney requested, and was granted, over Williams' objection, permission to add several names, including Mumford's, to the witness list. These events transpired *before* the jury was sworn.

We recognize "that a criminal trial is, even in the best of circumstances, a complicated affair to manage." *United States* v. *Jorn,* supra, 479. Nevertheless, "the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one." *Illinois* v. *Somerville,* supra, 471. "[I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States* v. *Jorn,* supra, 486. "Manifest necessity" by definition requires an element of surprise; that is, the reason for the declaration of a mistrial arises or becomes known to the court only *after* the jury has been sworn and jeopardy has attached.[9] See, e.g., *Arizona* v. *Washington,* supra (court declared mistrial due to improper and prejudicial comment of defense counsel during opening statement); *Cherry* v. *Director, State Board of Corrections,* 635 F.2d 414 (5th Cir.), cert. denied, 454 U.S. 840, 102 S. Ct. 150, 70 L. Ed. 2d 124 (1981) (court excused juror and declared mistrial after learning that juror's mother had died). Here, the defendant's trial had proceeded for two days, through the testimony of

---

[9] This does not mean, however, that something that was known prior to the jury being sworn could never assume a significance it did not originally appear to have had and thus constitute a legitimate ground for a mistrial. As this court has stated: "Manifest necessity is not amenable to a precise formulation or mechanical application because the 'high degree' of necessity mandated by that phrase can be found in a variety of circumstances." *State* v. *Van Sant,* 198 Conn. 369, 379, 503 A.2d 557 (1986).

five witnesses, before the trial court declared a mistrial, yet the cause to which the court attributed the necessity for a mistrial had been disclosed to the court and the prosecutor before the jury was sworn. Nor does this case present circumstances in which we must accord "special respect" to the trial court's determination, as in cases involving possible juror bias; *Arizona* v. *Washington,* supra, 510–14; or the inability of the jury to reach a verdict. See *United States* v. *Perez,* supra. In the circumstances of this case, therefore, we are constrained to conclude that further prosecution of the defendant would violate the double jeopardy provision of the fifth amendment.

The judgment is reversed and the case is remanded with direction to grant the motion to dismiss.

In this opinion SHEA, CALLAHAN, BERDON and SANTANIELLO, Js., concurred.

BORDEN, J., with whom COVELLO, J., joins, concurring. I agree with the result reached by the majority opinion, but I disagree with its analysis. I believe that the opinion relies on an analysis that is much more simple than the case requires and that is not supported by the cases upon which it relies.

The entire basis of the lack of manifest necessity, as I read the majority opinion, is that the trial court was made aware of the fact of dual representation by Williams before the jury was sworn. The only authority offered by the opinion for this basis is the following: " 'Manifest necessity' by definition requires an element of surprise; that is, the reason for the declaration of a mistrial arises or becomes known to the court only *after* the jury has been sworn and jeopardy has attached. See, e.g., *Arizona* v. *Washington,* [434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)] (court declared mistrial due to improper and prejudicial comment of defense counsel during opening statement);

*Cherry* v. *Director, State Board of Corrections,* 635 F.2d 414 (5th Cir.), cert. denied, 454 U.S. 840, 102 S. Ct. 150, 70 L. Ed. 2d 124 (1981) (court excused juror and declared mistrial after learning that juror's mother had died)." (Emphasis in majority opinion.)

Neither of these cases, however, nor any other case that I have read in this area, stands for the proposition that there is no manifest necessity unless the reason for the mistrial arises or becomes known to the trial court after jeopardy has attached. Of course, in both *Cherry* v. *Director, State Board of Corrections,* supra, and *Arizona* v. *Washington,* supra, the mistrial was declared after jeopardy had attached, and in both cases that was when the reason for the mistrial arose and became known to the judge. That is the usual scenario, because ordinarily the two predicates—the reason for mistrial and the declaration of a mistrial—occur more or less at the same time. But I fail to see how that means that where, as here, the information is made known to the trial judge before the jury is sworn, but neither the state, the defendant nor the court fully appreciates its significance at that time, somehow the court is later *precluded,* ipso facto, from later declaring a mistrial based on that reason if, at the later time, manifest necessity in fact does exist. Yet, despite the purported disclaimer in footnote 9 of the majority opinion, that is precisely what the majority opinion in this case says.

I agree that the fact that the dual representation problem was brought to the attention of the trial court, albeit indirectly, before the jury was sworn may be relevant to whether there was manifest necessity for a later mistrial. It seems to me, however, that using the timing of the disclosure as the sole basis of the decision, particularly here where that disclosure was made in the

course of a hearing on a motion to quash a subpeona that had nothing to do with dismissal or double jeopardy, is unprecedented and unwise.

I believe, therefore, that a more detailed analysis is required, one that employs the appropriate standards for determining whether manifest necessity existed in this case. Neither those standards nor how they are to be applied is very clear from the case law. Some of them are as follows.

The state has the burden of establishing manifest necessity, which does not mean an absolute or literal necessity for a mistrial but only a "high degree" of necessity. *Arizona* v. *Washington,* supra, 506. We give a great deal of deference to the trial judge's decision. Id., 514. The ultimate issue is whether the trial judge exercised sound discretion. Id. Implicit in the decision is the requirement that the trial judge considered the available alternatives to a mistrial. *Cherry* v. *Director, State Board of Corrections,* supra, 418; see also *State* v. *Van Sant,* 198 Conn. 369, 381, 503 A.2d 557 (1986) (trial court realistically considered alternatives to mistrial). A trial judge has acted with sound discretion in rejecting alternatives to a mistrial if reasonable trial judges could differ about the proper disposition, even if the mistrial was not strictly necessary. Id., 381 n.10. If the record indicates that the trial judge acted erratically or precipitously, his determination will not be upheld. *Grandberry* v. *Bonner,* 653 F.2d 1010 (5th Cir. 1981). These are just some of the applicable standards; other cases reinforce one or more of these factors, depending on the facts of the case.

Applying these factors, I conclude that this is a very close case. A good argument can be made for affirmance here: the trial court's action is entitled to great deference; arguably, reasonable trial judges could

differ—in fact, not one but two trial judges, Judge Cretella and Judge Damiani both agreed on the necessity for a mistrial; the reason for the mistrial was based on the conduct of the defendant's counsel in undertaking to represent a state's witness; and the judge did not act erratically or precipitously—he took a recess, heard argument, and presumably considered the alternatives, which he felt were unsatisfactory because of what he perceived as a conflict of interest.

Nonetheless, I conclude that there was an abuse of discretion in this case. First, it seems to me that the whole discussion of a conflict of interest was beside the point. There was no conflict of interest, in the sense of divided loyalties, by Williams representing both the defendant and Mumford, where, as represented to the court by Williams, Mumford was going to exercise her privilege not to testify. If anything, both Mumford's interest and the defendant's interest were the same at that point. There would only have been a conflict of interest if Mumford were to have testified, or there arose some inducement to her to testify that would have benefited her and not the defendant. But the record discloses nothing like that. In any event, clearly such a conflict was waivable by the defendant and by Mumford, pursuant to a proper canvass and hearing.

What was really at issue, then, was not an actual or potential conflict of interest in its ordinary sense, but the fact that Williams, by representing a state's witness and advising her to exercise her privilege, was interfering with the state's proof. I agree that the trial court was perfectly correct in not letting that happen, but the easily available remedy was simply to disqualify Williams from representing Mumford, rather than to abort the entire trial. Even then, if Mumford elected to stand on her privilege and not testify, there

would have been no conflict of interest, because Williams would not have had to cross-examine her. And if she changed her mind and did testify, at that point it would have been up to the defendant whether to waive any conflict in keeping Williams as his attorney.

Furthermore, neither the state nor the defendant wanted a mistrial, and both suggested alternatives to the trial court—the state, to disqualify Williams from representing Mumford, and the defendant, to hold a "conflict waiver" hearing, which Williams represented would yield a waiver by both the defendant and Mumford. In addition, the state knew before the jury was sworn that Williams represented one of its witnesses, and took no action to forestall the attachment of jeopardy. Since the state has the burden of establishing manifest necessity, it should bear whatever fault there may be for not warning the trial court about the problem of jeopardy before it attached.

Moreover, the problem surfaced before the jury was sworn, but was not acted upon until the third day of trial. Thus, the defendant was required to undergo three days of unnecessary trial expense and anxiety.

Finally, the state has the burden to establish a high degree of necessity for the mistrial. Under all of the circumstances, I do not think that high degree of necessity was established here.

I therefore concur in the result reached by the majority.