STATE OF CONNECTICUT *v.* MICHAEL KASPRZYK
(SC 16294)

Borden, Norcott, Katz, Sullivan and Vertefeuille, Js.

Argued September 20, 2000—officially released January 9, 2001

*Vincent F. Sabatini*, with whom were *James V. Sabatini* and, on the brief, *Tara K. Lyons*, for the appellant (defendant).

*Eileen McCarthy Geel*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Mary Rose Flaherty*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The issue in this appeal is whether the trial court properly concluded that a mistrial was required because of manifest necessity. The trial court, *Moore, J.*, denied the motion of the defendant, Michael Kasprzyk, to dismiss the information, concluding that the prior declaration of a mistrial by the court, *Cutsumpas, J.*, had been based on manifest necessity and that, therefore, further prosecution was not barred by the double jeopardy clause of the United States constitu-

tion. The defendant appealed to the Appellate Court from the judgment of the trial court denying his motion to dismiss, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.[1] We reverse the trial court's judgment.

The following facts are relevant to the disposition of this appeal. On the basis of an incident that occurred in New Britain on May 31, 1996, the defendant was charged with the crimes of sexual assault in the second degree in violation of General Statutes §§ 53a-8 (a)[2] and 53a-71 (a) (3),[3] conspiracy to commit sexual assault in the second degree in violation of General Statutes §§ 53a-48 (a)[4] and 53a-71 (a) (3), and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a).[5] On February 18, 1997, the defendant moved to dismiss the charges against him and to suppress a certain statement that he had made to the police. The trial court did not rule on those pretrial motions and they remained pending at the time of trial.

---

[1] The denial of a motion to dismiss, which is based upon a colorable claim of double jeopardy, is a final judgment for the purpose of appeal. *Shay v. Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000).

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 53a-71 provides in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (3) such other person is physically helpless . . . ."

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

On March 24, 1998, prior to the commencement of the trial, the defendant elected to have a bench trial. The defendant requested the trial court, *Cutsumpas, J.*, to rule on all of his motions before the trial commenced. Initially, the trial court stated that it would hear the motions prior to the trial. In preparation for the motions, the court read the police incident reports and witness statements, including the defendant's statement to the police. During these preliminary proceedings, the trial court asked the parties whether evidence relating to the pretrial motions should be presented before or during the trial. The defendant argued that the evidence on the motions should be presented and ruled on prior to trial. The defendant informed the court of the possibility that he might decide to testify in support of his pretrial motions. The defendant explained that his decision whether to testify depended on the evidence that the state would present during the hearing on the motions. The defendant further explained to the court that, in order to protect his state and federal constitutional privileges against self-incrimination at trial, the motions to dismiss and to suppress, and the trial itself, might have to be heard by different judges. Despite the defendant's argument, the trial court decided to reserve its decision on the motions until after the start of the trial in order to avoid hearing the same evidence twice.

On March 26, 1998, still prior to the start of the trial, the defendant moved to recuse Judge Cutsumpas. The defendant requested that a different judge preside at his court trial because the presiding judge already had reviewed evidence, including the defendant's statements, and would hear additional evidence in conjunction with the motions to dismiss and to suppress. The motion to recuse also posited that, because the motions to dismiss and to suppress were pending before the court, "[t]he Court cannot properly review these motions and try the case as its prior review of the State

file and consideration of the pending motions will place the court in an inherently prejudicial position as the trier [of] fact at trial." The defendant repeatedly argued that the preliminary motions should be decided prior to trial in order to protect his constitutional right against self-incrimination. The defendant suggested that either the trial court, *Cutsumpas, J.*, hear the motions and not the trial, or hear the trial, but allow another judge to hear the motions. The state opposed having separate proceedings for the motions and the trial, and opposed any recusal. Pursuant to Practice Book § 41-7, formerly § 813,[6] the trial court rejected the defendant's request and denied his motion to recuse without prejudice. The trial court restated that it was reserving its decisions on the motions to dismiss and to suppress. At this point, the trial court commenced the trial, and, simultaneously, the hearing on the motions, and the state began presenting evidence.

On March 27, 1998, after four police officers had testified for the state, the defendant confirmed that he would testify in support of his motion to dismiss. The court, recognizing the defendant's self-incrimination concerns with respect to the same trier hearing the motion and the trial, "terminated" the trial proceedings and incorporated all of the evidence previously heard during the trial into the motion hearing. Thereafter, on March 30, 1998, the court clarified its ruling. The court stated that it was declaring a mistrial based on the doctrine of manifest necessity. The court explained that the manifest necessity for the mistrial resulted from the defendant's confirmation that he would testify in support of his motion to dismiss. The court acknowledged that, on multiple occasions, the defendant had

[6] Practice Book § 41-7 provides in relevant part: "A motion made before trial shall be determined prior to trial, unless the judicial authority orders that the ruling be deferred until during the trial of the general issue or until after the verdict. . . ."

requested that his motions be heard prior to trial. On those occasions, however, the defendant never definitively said that he was going to testify. After declaring a mistrial, the court proceeded to hear additional evidence regarding the motions to dismiss and to suppress, including the defendant's testimony, and denied both motions.

Thereafter, the defendant moved to dismiss the charges against him on the grounds that further prosecution would violate the double jeopardy clause under the fifth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution. The trial court, *Moore, J.*, subsequently denied the defendant's motion to dismiss, concluding that, because the defendant confirmed that he would testify on March 27, 1998, one day after the trial began, the trial court, *Cutsumpas, J.*, acted properly in declaring a mistrial based on manifest necessity. This appeal followed.

This appeal raises the following issue: Was the declaration of a mistrial by the trial court, *Cutsumpas, J.*, based on manifest necessity? We conclude that it was not and that, therefore, double jeopardy principles preclude further prosecution of the defendant on the charges involved.

The doctrine of double jeopardy is well settled under both the federal and state constitutions. The fifth amendment to the United States constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." This clause is applicable to the states through the fourteenth amendment and establishes the federal constitutional standard concerning the guarantee against double jeopardy. See *Benton* v. *Maryland*, 395 U.S. 784, 787–95, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The protection afforded against double jeopardy under the Connecticut constitution is coextensive with

that provided by the constitution of the United States. Although the Connecticut constitution does not include a specific double jeopardy provision, the due process and personal liberty guarantees provided by article first, §§ 8 and 9, of the Connecticut constitution "have been held to encompass the protection against double jeopardy."[7] *State* v. *Lonergan*, 213 Conn. 74, 78, 556 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990); see also *State* v. *Laws*, 37 Conn. App. 276, 288, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995). Furthermore, this court "has long recognized as a fundamental principle of common law that no one shall be put in jeopardy more than once for the same offense. *State* v. *Langley*, 156 Conn. 598, 600–601, 244 À.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969)." (Internal quotation marks omitted.) *State* v. *Lonergan*, supra, 78. In a bench trial, jeopardy attaches when the court begins to hear evidence. *State* v. *Flower*, 176 Conn. 224, 225–26, 405 A.2d 655 (1978); see also *United States* v. *Jorn*, 400 U.S. 470, 479, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971).

The constitutional prohibition against double jeopardy "not only protects against being twice punished but also is a guarantee against being twice put to *trial* for the same offense. . . . *Abney* v. *United States*, 431 U.S. 651, 661, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977)." (Emphasis in original; internal quotation marks omitted.) *Sasso* v. *Aleshin*, 197 Conn. 87, 90 n.3, 495 A.2d 1066 (1985). "A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of proce-

---

[7] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

dural protections which the Constitution establishes for the conduct of a criminal trial." *United States* v. *Jorn*, supra, 400 U.S. 479. Specifically, "[a second prosecution] increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." *Arizona* v. *Washington*, 434 U.S. 497, 503–504, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). We have noted that "[t]his right is not absolute, however, and may in some cases be subordinated to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." (Internal quotation marks omitted.) *State* v. *Buell*, 221 Conn. 407, 413–14, 605 A.2d 539, cert. denied, 506 U.S. 904, 113 S. Ct. 297, 121 L. Ed. 2d 221 (1992). A reprosecution following a declaration of a mistrial is permitted if the mistrial was required by "manifest necessity." *Aillon* v. *Manson*, 201 Conn. 675, 681 n.5, 519 A.2d 35 (1986).

The primary definition for when "manifest necessity" justifies declaring a mistrial was articulated by the United States Supreme Court in *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824): "[I]n all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . ."

Our standard of review for whether a mistrial was justified by manifest necessity is settled. "Because of

the importance of the defendant's right to have his trial concluded by a particular tribunal, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate manifest necessity for any mistrial declared over the objection of the defendant. . . . With respect to construction of the terms manifest necessity, a high degree of necessity is required before a conclusion may be reached that a mistrial is appropriate . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Van Sant*, 198 Conn. 369, 378–79, 503 A.2d 557 (1986), quoting *Arizona* v. *Washington*, supra, 434 U.S. 505. "Manifest necessity is not amenable to a precise formulation or mechanical application because the 'high degree' of necessity mandated by that phrase can be found in a variety of circumstances." *State* v. *Van Sant*, supra, 379.

"[A] trial judge's characterization of his own action cannot control the classification of the action." (Internal quotation marks omitted.) *United States* v. *Scott*, 437 U.S. 82, 96, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978). "A reviewing court looks for a manifest necessity by examining the entire record in the case without limiting itself to the actual findings of the trial court. . . . It is the examination of the propriety of the trial court's action against the backdrop of the record that leads to the determination whether, in the context of a particular case, the mistrial declaration was proper. Given the constitutionally protected interest involved, reviewing courts must be satisfied, in the words of Justice Story in *Perez*, that the trial judge exercised sound discretion in declaring a mistrial." (Citations omitted; internal quotation marks omitted.) *State* v. *Van Sant*, supra, 198 Conn. 379.

Applying this standard of review to the present case, we conclude that the trial court improperly relied on the doctrine of manifest necessity to declare a mistrial.

Recently, in *State* v. *Buell*, supra, 221 Conn. 416, we indicated that *when* the court became aware of the circumstances causing it to declare a mistrial is relevant to whether the new trial was required by manifest necessity. Because our conclusion in the present case is guided by *Buell*, a brief review of the facts in *Buell* is in order.

In *Buell*, the state and the trial court had been made aware, prior to the commencement of the trial, that counsel for the defendant also represented a witness for the state. Id., 409. The state indicated its opposition to the defense counsel's representation of the witness. Id., 409–10. Nonetheless, the court commenced the trial. Id., 410. After the presentation of testimony from five witnesses for the state, the court declared a mistrial because of the inherent conflict engendered by the defense counsel's representation of a state's witness. Id., 410–11. The court declared a mistrial despite the defense counsel's assurances and the recommendation of the state's attorney that the court appoint another counsel for the witness. Id., 411.

On appeal, we held that there was no manifest necessity for a mistrial because the record indicated that, before the jury had been sworn and jeopardy had attached, the trial court had been made aware that the defense counsel represented the state's witness. Id., 412. In reaching this decision, we set forth the following standard for when sound discretion exists to declare a mistrial based on manifest necessity: " 'Manifest necessity' by definition requires an element of surprise; that is, the reason for the declaration of a mistrial arises or becomes known to the court only *after* the jury has been sworn and jeopardy has attached." (Emphasis in original.) Id., 416.

Applying the *Buell* standard to the present case leads us to conclude that, in the present case, the trial court

did not exercise sound discretion when it declared a mistrial. No manifest necessity existed for a mistrial because the defendant, *prior to trial*, specifically attempted to avoid the circumstance that ultimately occurred and that ultimately persuaded the court to declare the mistrial.

On March 24, 1998, prior to the introduction of evidence, the defendant requested that his motions be heard as a separate proceeding before the start of the trial. Additionally, the defendant notified the court that he might testify in support of his motions and that he ultimately would decide that question depending on what evidence the state produced. Because he had elected a bench trial, the defendant conveyed his concern about preserving his fifth amendment privilege against self-incrimination while still allowing himself the option to testify on behalf of his motions.[8] The defendant informed the court that this would be difficult to do if the trier of fact for his trial was the same judge who had the motions.[9] The trial court chose to proceed

[8] "[Vincent Sabatini, Defense Counsel]: Let me just raise this other issue. This due process issue. There is some case law that indicates that on a motion to suppress or a motion to dismiss, for [the] limited purposes of that motion the defendant's testimony may be relevant without invading his otherwise privilege[d] status. And—

"The Court: Doesn't that apply when there is a jury, however?

"Mr. Sabatini: I am not so sure because Your Honor then would only, following Your Honor's view on this, Your Honor then would get one side of the story on the suppression and on the dismissal.

"The Court: Isn't that what happens when warrants are sought all of the time, with one side of the story?

"Mr. Sabatini: We are beyond that now, though. I can still attack any warrant and I can certainly raise a factual basis that the police may of have or submitted to the court in attacking that warrant. I still—I think have the right to bring witnesses in for the limited purposes of attacking the warrant. And I think that I have in this case. I don't want to under the due process right violate my client's rights to have a fair and full hearing on the suppression."

[9] "The Court: So are you suggesting that we have a—this trial that is going to commence and at some point your client may wish to give his version of the arrest, the circumstances surrounding the arrest, and I am somehow suppose[d] to put that out of mind when I consider his guilt or innocence?

simultaneously with the trial and the hearing on the motions despite the defendant's suggestion that, to avoid any constitutional problems, that court should hear either the motions or the trial, but not both.[10] The record also indicates that the trial court understood the defendant's position and his concerns regarding the potential for judicial bias.[11]

"[Vincent Sabatini, Defense Counsel]: *That raises a problem. It may be that the issue of suppression and dismissal might have to be heard by someone else. Or if Your Honor hears it, Your Honor may not be able to be the trial judge. I just raised that and I believe that is a consideration here that should be made. I bring it to Your Honor's attention prior to [when] the trial starts.*" (Emphasis added.)

[10] "The Court: And I don't know if I want to hear the same evidence twice from a police officer, and I don't know if that would be wise—

"[Vincent Sabatini, Defense Counsel]: Well, I think—

"The Court:—use of judicial time.

\* \* \*

"The Court: . . . So I am going to, as sure as it is, I am going to reserve decision on your motion to dismiss and the trial can proceed. And that applies also to our motion to suppress, by the way. We will have to have evidence from the police officers regarding the confession, and I am not going to have two hearings here now that we don't have a jury. Now are you ready to proceed, counsel?"

[11] "The Court: Counsel.

"[Mary Rose Flaherty, Assistant State's Attorney]: My claim Your Honor at this point there shouldn't be allowed a selective waiver of the fifth amendment privilege. Either he will testify or he won't.

"The Court: *Well, he is suggesting that the arrest in the first instance was illegal for reasons that he argued this morning and earlier. And the only way he is going to be able to demonstrate that is that if his client had an opportunity to testify. And if his [client] testified in front of me, he will be giving up a constitutional privilege to remain silent. Whereas if he went in front of another judge and testified that issue could be disposed of and it could be returned to me and he wouldn't have to worry about having giving up his constitutional privilege. If I recited your position correctly, counsel.*

"[Vincent Sabatini, Defense Counsel]: Yes, sir.

"Ms. Flaherty: I understand that is the position Your Honor, but if he is going to invoke his fifth amendment privilege, then he can't selectively get up and testify as to things that are favorable to him. I should be allowed an opportunity to cross-examine.

"The Court: You would at the suppression hearing. I think he has case law and I remember reading a case of that nature and I wish I can recite cases from memory but I can't. Maybe you have the case.

On March 26, 1998, still prior to jeopardy attaching, the defendant moved to recuse the trial court, requesting that a different judge preside over the trial. The defendant repeated his argument that the preliminary motions should be disposed of prior to trial,[12] and

"Mr. Sabatini: Not off the top of my head, but let me just point this out, Your Honor that, the state intends in this case, to introduce my client's statement as an admission. The respective of the fifth amendment privilege. And I submit to Your Honor that I should be allowed to attack that statement introduction under the constitutional argument that I want to make. Respect to both the trial and have an impartial tribunal hear that." (Emphasis added.)

[12] "The Court: Next counsel, in your motion to recuse, you state two additional motions are now before the court. Mainly, a motion to dismiss and a motion to suppress. And you state that the court cannot properly review these motions and try the case as its prior review of the state file and consideration of the pending motions will [place] the court in an inherently prejudicial position as to the trier of fact at trial. What do you mean by that counsel?

"[Vincent Sabatini, Defense Counsel]: I mean, Your Honor that in order to fairly and thoroughly review the motions that I had filed the motion to suppress and motion to dismiss which are normally heard prior to any evidence being taken, *and I submit in this case, that it is important that they be heard and disposed of prior to any evidence being taken. That it would put Your Honor in a position of as the trier of fact of not being able to discern or perhaps getting an impression of the case before the actual evidence comes in. The preliminary documents and the preliminary evidence that comes in on motions are for the purposes of the motion.* They may or may not be the same evidence or factual [basis] that comes in during the evidentiary portion of the trial. And I believe that it has unfairly put Your Honor in a position of having already known and seen the record in the file—

"The Court: At your request.

"Mr. Sabatini: Well, Your Honor keeps on saying that but I don't believe that makes a difference. I mean, *I am entitled to file the motions. Your Honor asked me to go ahead with the motion to dismiss and I am entitled to put forth evidence. I am still not finish[ed] with that. I think we ought to even dispose of that before we start this case. It puts, I believe Your Honor in a position where you may not be impartial on the facts.* I also would say that Your Honor, Tuesday had made a statement about the police conduct in this situation which I thought I would like to put on the record as I thought—I don't want to say its a pre-judgment, but I think it is [an] indication of an opinion. And I think that may unfairly put the defendant in a position of not receiving a fair trial.

\* \* \*

"The Court: Counsel, isn't that what judges do when they rule on evidence

that a different judge should preside at the trial.[13] The

that is presented over and over again at bench trials? They look at the documents to determine whether or not they are admissible. Isn't that what judges do?

"Mr. Sabatini: Yes, Your Honor you do that. There is no question about that. But I think in this case where there has to be or there should be factual findings. And I don't know if Your Honor is going to rule these motions to dismiss before trial starts or not, but there has to be factual determinations in two very important areas here, Judge. The area one of this warrantless arrest which is an unusual situation and a very important one under our constitution because it is a warrantless arrest in someone's home. Secondly, the issue of the suppression of the statement which we believe was given through trickery and coercion. Those are two very important constitutional issues and rights that my client has to protect. And I believe under our rules and under the constitution of the state of Connecticut and of the constitution of the United States, he has a right to have a fair and impartial review by a trier of fact of those motions. *Prior to the start of evidence in the trial because I believe it is important to his rights and to the way the trial is conducted that those motions are in fact heard.*

\* \* \*

"I believe in this case [it] would deny my client the right to properly put forth his evidence with regard to those motions as to what happened." (Emphasis added.)

[13] "[Vincent Sabatini, Defense Counsel]: Well, I think it is either, or Judge. I think either Your Honor hears the motions and not hear the trial, or hears the trial and not the motions."

Moments later, again, defense counsel attempted to clearly define alternatives for the judge:

"Mr. Sabatini: . . . I think however, in this case, on the motion to dismiss where the issues are unique with the sense of the warrantless intrusion into the home without consent and the burden being on the state of Connecticut to prove that consent was knowingly given that it would place this court in an untenable position of having to hear facts on that issue and then go on to the trial if it denies the motion. *I believe the court and I would urge the court to hear the motion to dismiss first, and have an evidentiary hearing on that motion. And if the court then decides to deny the motion, I would think the court would then recuse itself [prior to trial].*

"*If the court decides not to hear the motion to dismiss then the court [obviously] has the right to hear the trial. But I believe because of the motion to dismiss is raised, and I have an obligation to raise it.* The burden shifts to the state to prove that they had consent. And I can't put my client in a position of having him handicap, so to speak, from fairly making a record in that motion to dismiss by starting this trial and the way it is going to be started.

\* \* \*

"Now, I perceived the situation as this. *I have a very important and a*

judge expressed reservations about hearing the same evidence twice, causing unnecessary delay. The defendant reiterated that preserving his constitutional privilege and maintaining an impartial proceeding outweighed the need for judicial economy.[14] Despite these arguments, the trial court denied the motion to

*very constitutionally strong, [probably] the strongest constitutional argument any citizen of this country can make. An unlawful intrusion in someone's home. I believe that I am entitled on behalf of my client to have him be heard on that motion before any evidence begins on trial. And I know Your Honor said that Your Honor would take evidence and couldn't make a decision on it.*

"*My only point here is to urge Your Honor to have the hearing on the motion to dismiss now, before trial starts. Make a ruling on that and then decide where we go from there.* I believe unlike maybe the motion to suppress where Your Honor may have some discretion and it would not necessarily, although I do believe I have argument on that, affect the right of the defendant.

"I think under the motion to dismiss the factual situation and the burden shifting, I don't know practically, how this would happen in a course of a trial, if the state would put on its evidence and the police officer testifies, if they are testifying about the factual situation of the case. *I don't know where if they talk about this intrusion in the house where would I then put my case on. And I am certainly not going to jeopardize my client's fifth amendment right if he wishes to take that privilege to jeopardize him to impel him or compel him to testify simply, to overcome a procedural problem. Where I believe he may have the right to testify for a limited purpose on the procedural problem that is the warrantless arrest. And by Your Honor placing me on trial and not having a hearing on that motion to dismiss, I believe jeopardizes his rights.*" (Emphasis added.)

[14] "[Vincent Sabatini, Defense Counsel]: I can only urge upon Your Honor that we go ahead and have a hearing on that motion to dismiss.

"Certainly, Your Honor, I believe Your Honor would have such a hearing if the jury was in fact impaneled prior to evidence being presented before the jury.

"The Court: For what purpose? To avoid the jury being excused every five minutes as counsel raises motions.

"Mr. Sabatini: But Your Honor, please. When we are talking about judiciary economy [versus] the constitutional rights of a citizen, I don't think the scales are equal there. I can understand Your Honor's reasoning, but in this case, Your Honor, the rights of my client are so important that I can't accept on behalf of my client, that Your Honor's position is, 'Well, I want to avoid two trials.' As a legitimate [basis] to say I can't do this, it just seems to me so important of an issue that it couldn't even be a case determining issue."

recuse and decided to start the trial. On March 27, 1998, the defendant confirmed that he would testify in support of his motion to dismiss after four police officers had testified on behalf of the state. Recognizing the defendant's self-incrimination concerns with regard to the same trier of fact hearing both the motions and the trial, the court terminated the trial and incorporated all the evidence into the motion hearing. On March 30, 1998, the court clarified the ruling it had made on March 27, 1998, by stating that it had declared a mistrial based on the doctrine of manifest necessity.

After a thorough review of the events leading up to the trial court's declaration of a mistrial, we conclude that the trial court improperly declared a mistrial based on the doctrine of manifest necessity. The cause of the mistrial, namely, the conflict inherent in the same trier of fact presiding over both the hearing on the motions to dismiss and to suppress and the trial itself when the defendant had informed the court that he might testify during the motions, was brought to the attention of the court prior to the initiation of the trial. The court's desire for judicial economy should not have controlled the trial court's determinations in this case, particularly when the defendant was attempting to preserve his fifth amendment right against self-incrimination. Accordingly, we conclude that there was no surprise warranting the declaration of a mistrial based on manifest necessity because the "reason for the declaration of a mistrial" was known to the court before jeopardy attached. Id.

The state attempts to distinguish *Buell* by stating that, in the present case, the surprise occurred after jeopardy had attached because the defendant confirmed that he would testify only after the trial began. This argument, however, overlooks the fact that the defendant could not definitively state prior to the presentation of the state's evidence whether he would testify in support of

his motions because that decision depended on the nature of the state's evidence. The defendant's position is persuasive because the record indicates that, prior to the commencement of the trial, in the double jeopardy sense, he was reasonably clear in attempting to protect his constitutional privileges.

Moreover, we previously have acknowledged that "[t]he duty of the trial court to exercise [sound] discretion is not diminished by any contribution the litigants may arguably have made to the situation in which the court finds itself." Id., 415. Because the court chose not to hear the motions prior to trial, the defendant had to make his decision as to whether to testify with regard to his motions after the trial began. To require that the defendant conclusively decide whether to testify at his motion hearing or his trial prior to the commencement of the trial would have severely impeded his ability to argue his case and would have given the state an unnecessary advantage.[15] The United States Supreme Court has recognized that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons* v. *United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). The defendant, in an attempt to avoid a mistrial, made the court aware of his concerns on multiple occasions prior to trial, going so far as to seek a recusal. Thus, consistent with our conclusion in *Buell*, we conclude that the situation that led the court to terminate the trial was created by the court's refusal to recognize

---

[15] In the present case, a situation was created where the only way a mistrial could have been avoided was if the defendant had waived his right to testify during the hearing on the motions, something the defendant was not required to do.

the propriety of the defendant's position until it was too late.[16] See *State* v. *Buell*, supra, 221 Conn. 416–17.

Our conclusion in the present case does not rest entirely, however, on the lack of surprise and the fact that the court had been made aware of the problem leading to a mistrial prior to the time when jeopardy attached. We recognize that manifest necessity cannot be analyzed under any "precise formulation or mechanical application . . . ." *State* v. *Van Sant*, supra, 198 Conn. 379; see also *Illinois* v. *Somerville*, 410 U.S. 458, 462, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973); *Abdi* v. *Georgia*, 744 F.2d 1500, 1503 (11th Cir. 1984), cert. denied, 471 U.S. 1006, 105 S. Ct. 1871, 85 L. Ed. 2d 164 (1985). More precisely, a reviewing court's primary role is to consider the entire record and determine whether the trial judge exercised sound discretion in declaring a mistrial. *State* v. *Buell*, supra, 221 Conn. 419 (*Borden, J.*, concurring); *State* v. *Van Sant*, supra, 379. Although surprise and the timing of the events leading to a mistrial are important when reviewing mistrials based on manifest necessity, we also recognize the importance of determining whether the trial court considered available alternatives to a mistrial. *State* v. *Buell*, supra, 419 (*Borden, J.*, concurring); *State* v. *Van Sant*, supra, 381. Furthermore, a trial court's determination will not be upheld if the trial court reasonably could have avoided a mistrial, or if the court acted in an erratic or precipitous

---

[16] The state, both at oral argument before this court and in its brief, suggests that the defendant attempted to create a situation wherein double jeopardy would attach. The record does not support this suggestion. In fact, the trial court commended the defense counsel for his advocacy with regard to this matter.

"The Court: . . . I might add that the defense did this always with the highest degree of professionalism. None of these comments should mean to cast any sponginess on the manner which the defendant did this—who did this with the highest degree of professionalism, and I [have] been very impressed with the [defense counsel's] vigorous and zealous presentation of his client's position and in fact, he has been able to maintain his high degree of professionalism."

manner. *State* v. *Buell*, supra, 419. Thus, although there is no single defining factor for when manifest necessity exists, these various factors, in addition to the timing and surprise concerns, "[employ] the appropriate standards for determining whether manifest necessity exist[s]." Id.

In the present case, we are persuaded that, because of the alternatives that existed and were presented to the trial court, a mistrial could have been avoided. The original judge could have heard the motions and then recused himself from the trial, if necessary, or he could have arranged for another judge to hear the motions prior to the trial court beginning trial. The trial court rejected these alternatives when they were brought to its attention by the defendant. It must be noted that the record does not indicate that a transfer to another judge was not possible. Indeed, there is nothing to suggest that there were no other judges available to hear the motions prior to trial.[17] Moreover, the defendant repeatedly requested that his pretrial motions be heard prior to trial. The state not only opposed having separate proceedings prior to trial, but also opposed the defendant's request to have the judge recused before the trial began. Had the motions been heard by another judge and had they been denied, the original judge still could have conducted the trial and the defendant's constitutional rights would not have been implicated.[18] In

---

[17] This should not suggest that manifest necessity would have existed simply based on the number of judges available or whether a transfer was possible. We are simply noting that these alternatives could have been considered in the present case.

[18] The court in *United States* v. *Sartori*, 730 F.2d 973 (4th Cir. 1984), was unsympathetic to the judge's midtrial recusal based on a concern of bias where the information causing the recusal was known prior to trial and the court easily could have avoided the recusal problem entirely. Although the court in *Sartori* held that manifest necessity did not exist for a mistrial because it involved a jury trial and the alternative of substituting another judge existed, the court emphasized that the problem of bias could have been resolved prior to the beginning of the trial: "If Judge Young had serious doubts about his ability to remain impartial, he should have recused himself

the alternative, if the original judge had heard the motions to dismiss and to suppress and if the defendant ultimately had chosen to testify during the motions, the original judge could have recused himself prior to the commencement of the trial. If the defendant, however, decided not to testify at his preliminary hearing before the original judge, the same judge could have used the record of the preliminary hearing at trial and could have avoided any concerns of unnecessary delay. These alternatives severely weaken the high degree of necessity required to establish manifest necessity.[19]

before empaneling the jury. Similarly, his concerns about the appearance of judicial impropriety should have been addressed before jeopardy attached." Id., 976.

[19] The state argues that manifest necessity existed for a mistrial because the practical effect of the defendant's motion to recuse the judge was, in essence, a motion for a mistrial. It is well established that where the defendant moves for, or consents to a mistrial, the defendant is prevented from raising a double jeopardy claim. *State* v. *Aillon*, 182 Conn. 124, 131–32 n.6, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S. Ct. 883, 66 L. Ed. 2d 817 (1981). Courts examine the totality of the circumstances surrounding the trial court's entry of a mistrial to determine whether a defendant either expressly or impliedly consented to the mistrial. Id. From the totality of the circumstances present in this case, however, we conclude that the defendant *did not* consent to or move for the mistrial. Accordingly, the state bears the burden of establishing that the termination of the trial was based on manifest necessity. See *Arizona* v. *Washington*, supra, 434 U.S. 505.

We note that the defendant never expressly stated that he was moving for a mistrial when the trial court gave him an opportunity to make such a declaration. Moreover, we decline to infer consent from the defendant's motion to recuse, because the defendant, in an effort to safeguard his constitutional rights, repeatedly notified the court before the trial of the problem that would lead eventually to the mistrial. In effect, the defendant was objecting to the manner in which the court was proceeding, and which ultimately led to a mistrial, even before the trial began. See *State* v. *Buell*, supra, 221 Conn. 421 (*Borden, J.*, concurring) ("In addition, the state knew before the jury was sworn that [defense counsel] represented one of its witnesses, and took no action to forestall the attachment of jeopardy. Since the state has the burden of establishing manifest necessity, it should bear whatever fault there may be for not warning the trial court about the problem of jeopardy before it attached."). In the present case, the defendant cannot be deemed to have moved for a midtrial termination because the defendant had made reasonable attempts to resolve the issues that led to the mistrial prior to the beginning of the trial.

Finally, during oral argument, the state argued that allowing a defendant who may testify in a bench trial to have his pretrial motions heard by a separate judge will lead to forum shopping. We disagree. The state's forum shopping concerns are not realistic in light of the lack of control that a defendant has in determining which judge would be assigned to hear the motions. Moreover, the importance of allowing a defendant the opportunity to testify during his pretrial motions and still preserving his right against self-incrimination at trial outweighs these elusive forum shopping concerns and controls this court's determinations in this situation. See *Simmons* v. *United States*, supra, 390 U.S. 394 ("[I]n this case, [a defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another."). Under the circumstances of the present case, allowing the motions to be heard by another judge prior to trial, when it appeared that the defendant might testify, would have avoided the defendant's concern that his constitutional right against self-incrimination would be either implicated or violated. Also, this would have prevented double jeopardy from attaching. See *Serfass* v. *United States*, 420 U.S. 377, 388–92, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975) (holding no double jeopardy attaches where court in jury trial agrees to hear motion to dismiss prior to jeopardy attaching, specifically noting that motion to dismiss is of "no significance" unless jeopardy has attached for purposes of claiming double jeopardy).

We must emphasize that our conclusion regarding manifest necessity is strictly limited to the specific facts

and circumstances before us.[20] Our conclusion might have been different if the defendant had notified the court prior to trial that he was definitely not going to testify during the motions, or if he first had raised the possibility of testifying after the trial had commenced, or he had not repeatedly requested that his motions be heard before the trial commenced. The surprise would have occurred after jeopardy had attached, and there would have been available fewer alternatives to the declaration of a mistrial. Under those circumstances, sound discretion might lead to declaring a mistrial based on manifest necessity. See *State* v. *Autorino*, 207 Conn. 403, 411, 541 A.2d 110, cert. denied, 488 U.S. 855, 109 S. Ct. 144, 102 L. Ed. 2d 116 (1988). Those variations, however, are not the facts of the present case. Our conclusion that the defendant in this case should not be further prosecuted because of an impropriety he repeatedly had attempted to avoid before jeopardy attached is consistent with our analysis in *Buell*. Accordingly, we conclude that the trial court improperly declared a mistrial, and that further prosecution of the defendant is barred by the double jeopardy clause of the fifth amendment to the United States constitution and by article first, §§ 8 and 9, of the Connecticut constitution.

The judgment is reversed and the case is remanded with direction to grant the motion to dismiss the charges against the defendant and to render judgment thereon.

In this opinion the other justices concurred.

---

[20] Thus, we reject the defendant's request that we establish a rule stating that in a bench trial, the trial court is automatically required to have pretrial motions heard by another judge when a defendant makes such a request prior to the onset of the trial.