STATE OF CONNECTICUT *v.* RONALD G. ROY

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 8—decision released December 2, 1980

*Charles N. Sturtevant III,* for the appellant (defendant).

*D. Michael Hurley,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee (state).

PARSKEY, J. The defendant's sole claim in this appeal is that he was twice placed in jeopardy in violation of the fifth and fourteenth amendments to the United States constitution when he was tried by a jury comprised of five members of the original jury panel and one juror who was added to the panel after the original jurors and alternate had been sworn in. These proceedings began after the defendant was charged in a substituted information with second degree sexual assault in violation of General Statutes § 53a-71 (a) (1). He pleaded not guilty and was tried by a jury.

Jury selection began on July 12, 1979. Members of the venire panel were informed, as a group, of the nature of the case, the charges against the defendant and the names and addresses of the defendant and all of the witnesses expected to testify in the case. Following individual voir dire, a

panel of six jurors and one alternate were sworn in and the substituted information and the bill of particulars were read to them. Before the state called its first witness, however, the state's attorney informed the court that he had learned that one of the jurors was acquainted with one of the state's witnesses. At the same time the clerk of the court told both the state's attorney and defense counsel that another juror knew the defendant's uncle.

At the court's direction, each of these two jurors was individually questioned by counsel. On the basis of these voir dire examinations,[1] the court excused both jurors on its own motion. Although the defendant indicated to the court that he wanted the first juror excused, he did not press any argument to the effect that the second juror should not be excused as a result of the juror's relationship to the defendant's uncle.[2] The state urged the court to excuse only the second juror.

After both jurors were excused, four members of the original jury and one alternate juror remained. Two new jurors were then selected; one became a member of the jury along with the original alternate and the second became the new alternate. During this process, the defendant continued to object, moving to dismiss the charges on the ground

[1] None of the information elicited during the second voir dire examination came to light during the original jury selection process. The reading of the witnesses' names had not jarred the first excused juror's memory regarding her acquaintance with one of the state's witnesses. The witness, however, recognized the juror by sight at the courthouse.

The second juror did not recall his acquaintance with the defendant's uncle until the night after his original voir dire examination.

[2] At this time the defendant raised the double jeopardy problem, pointing out that if the second juror was excused the trial should end because jeopardy had already attached when the original jury was sworn in.

that adding jurors in this fashion twice placed the defendant in jeopardy in violation of the fifth amendment to the United States constitution. The trial proceeded with the new jury, ending with the jury being dismissed because they were hopelessly deadlocked. From the denial of his renewed motion to dismiss on the ground of double jeopardy, the defendant appealed to this court.

The fifth amendment to the United States constitution provides, in pertinent part "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This clause, which is applicable to the states through the fourteenth amendment; *Benton* v. *Maryland,* 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); establishes the constitutional standards concerning the guarantee against double jeopardy. *Crist* v. *Bretz,* 437 U.S. 28, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978); *Benton* v. *Maryland,* supra, 795. Because under these standards jeopardy attaches when a jury panel is selected and sworn; *Crist* v. *Bretz,* supra, 38; the defendant argues that, once the original jury panel was reduced to five, the trial judge had no alternative but to declare a mistrial and, therefore, that by adding jurors to the remaining members of the original panel, the defendant was put to trial by the court before a second jury.

The fact that jeopardy has attached does not mean, however, that a subsequent termination of the trial necessarily mandates a dismissal of the charge on the basis of the double jeopardy clause. There are occasions where, due to manifest necessity, a criminal case may be retried before another jury. *Downum* v. *United States,* 372 U.S. 734, 735–36, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963); *Wade* v.

*Hunter,* 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949). The inability of the jury to agree, such as ultimately occurred in this case, is the classic example of such necessity. *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824). Discovery by the trial judge during a trial that a member or members of the jury were biased for one side or another has also been held to warrant discharge of the jury and direction of a new trial. *Wade* v. *Hunter,* supra; *Thompson* v. *United States,* 155 U.S. 271, 274, 15 S. Ct. 73, 39 L. Ed. 146 (1894); *Simmons* v. *United States,* 142 U.S. 148, 154–55, 12 S. Ct. 171, 35 L. Ed. 968 (1891).

"The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury." *Crist* v. *Bretz,* supra, 35. Where, for reasons amounting to manifest necessity, the chosen panel is no longer available, the defendant's interest in that jury can no longer be protected and therefore the double jeopardy clause does not bar a retrial.

It should be observed that this is not a case of either prosecutorial or judicial overreaching; see *United States* v. *Jorn,* 400 U.S. 470, 485, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971); nor does the record support a claim that in dismissing the jurors for cause the judge failed to exercise judicial discretion scrupulously to serve the ends of public justice. Id. See also *Arizona* v. *Washington,* 434 U.S. 497, 513–16, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). The first juror was excused after the court learned that one of the jurors had been an employee of one of the state's witnesses and that the juror's husband had received commissions for representing that witness

as a real estate agent. The second juror was excused when the court learned that he was a good friend of the defendant's uncle, Sala Roy, that he knew that another uncle, Ranie Roy, had gone to prison and that he did not wish to be a juror in the case knowing that the defendant was related to Ranie and Sala Roy. The defendant requested the disqualification of the first juror and did not object to the disqualification of the second juror. The defendant's only objection was interposed when, as a result of these disqualifications, the court was confronted with a jury of five and directed that two addional jurors be drawn instead of declaring a mistrial. Because a five-member jury is constitutionally impermissible in a criminal trial; *Burch* v. *Louisiana,* 441 U.S. 130, 138, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979); *Ballew* v. *Georgia,* 435 U.S. 223, 239, 98 S. Ct. 1029, 55 L. Ed. 2d 234 (1978); the defendant's trial could not continue with the original jury. Under these circumstances, which amounted to a manifest necessity whether so designated by the court or not; *Arizona* v. *Washington,* supra, 516–17; had the trial court declared a mistrial, the defendant could have been tried before another jury without offending the double jeopardy clause. Further, because we find that the manifest necessity standard has been met in this case, we conclude that the continuation of the trial with the additional jurors was not barred by the double jeopardy clause. The fact that the court continued with the trial instead of declaring a mistrial does not alter our analysis of the double jeopardy problem, although the practice of adding jurors, as was done in this case, could raise a due process question.

"Due process requires that a criminal defendant be given a fair trial before an impartial judge and

an unprejudiced jury in an atmosphere of judicial calm." *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225 (1975). We need not address the due process implications of the court's action because the trial was ultimately aborted due to the jury deadlock. We note, however, that when new jurors are added to an existing sworn panel, the method of juror selection, the number of peremptory challenges allowed, and whether any testimony or other evidence has been presented are among the most obvious areas of concern.

There is no error.

In this opinion the other judges concurred.