## STATE OF CONNECTICUT *v.* DERECK THOMAS
## (AC 28179)

Bishop, McLachlan and Borden, Js.

Argued October 16, 2007—officially released March 4, 2008

*Christine A. Janis*, assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Seth R. Garbarsky*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Dereck Thomas, appeals from the trial court's denial of his motion for

specific performance of a plea agreement. On appeal, the defendant claims that the court improperly (1) refused to enforce a valid plea agreement in violation of the defendant's fifth amendment protection against double jeopardy and in violation of his federal and state constitutional due process rights, and (2) refused to enforce a valid plea agreement after having accepted the defendant's guilty plea. We dismiss this appeal for lack of jurisdiction.[1]

The following factual and procedural history is relevant to our consideration of the defendant's appeal. The defendant, a forty-seven year old male, was arrested for engaging in sexual relations with a fifteen year old female. The state charged the defendant with four counts of sexual assault in the second degree in violation of General Statutes § 53a-71, and four counts of risk of injury to a child in violation of General Statutes § 53-21. On October 11, 2005, the defendant appeared in court and pleaded not guilty. Subsequently, the state and the defendant entered into plea negotiations in which the court, *Rubinow, J.*, intervened and offered the defendant a more favorable deal. The court offered the defendant five years incarceration suspended after one year served in jail with ten years probation, instead of the state's offer of ten years suspended after five years served in jail. The case was continued, and on December 16, 2005, the defendant pleaded guilty pursuant to the plea agreement to one count of sexual assault in the second degree and one count of risk of injury to a child.[2] During the plea canvass, the court explained

---

[1] We lack subject matter jurisdiction to hear this appeal because the denial of a motion for specific performance is not a final judgment.

[2] According to the transcript, the state asserted that it "had made a recommendation of ten years [incarceration] to serve, suspended after five years, and a ten year period of probation, with a cap and a right to argue. After a discussion in pretrial this morning, I believe Your Honor's offer is five years to serve, suspended after one year, and ten years probation, again, with a cap and a right to argue." The court stated: "The cap, contemplating the minimum mandatory period of nine months, notwithstanding, and the court further had indicated that any credit against that one year would be

to the defendant that "the sentence [it would] likely impose [would] be five years in jail suspended after you serve one full year but that the victim's position may affect the court so that you do the minimum mandatory nine months instead of the potential maximum sentence." Additionally, the defendant requested a presentence investigation, which the court subsequently ordered. The court accepted the defendant's plea and informed the defendant that he would have to attend several continuance dates. The court set forth the continuance dates as January 27, 2006, as a docketing date and February 10, 2006, as the date to obtain the presentence investigation report.[3]

On February 15, 2006, the court held a hearing to address the presentence investigation and to sentence the defendant. At this hearing, the state requested that the plea be vacated on the basis of the presentence investigation report, arguing that "the defendant be allowed to withdraw his pleas based on the fact that the [presentence investigation], in the state's view, is not commensurate with the sentence of one year." In response, the court stated that "to ensure that the implications of the constitutional provisions at issue are served, this court can not, will not impose sentence until it has extended to the complainant an opportunity to be heard." Thus, the court continued the hearing to

based upon whether or not the victim was willing to make an appropriate statement to the court, as there have been great inconsistencies between the state's understanding of the victim's position and the position that was identified by the public defender."

[3] The court informed the defendant that the conditions for the continuance were as follows: "If you fail to appear in court on February 10, 2006, for purposes of receiving your sentence on that date, it is, under our law, likely that the preagreement that you've reached between your lawyer and the state and the court is going to be void, it will be vacated. You had indicated . . . you knew the state was looking for ten years hanging over your head, and you know that the court, under all the circumstances, felt that it was worth what the public defender had indicated it was worth, which is a five year sentence, suspended after you do one year in jail."

March 6, 2006, in order for the court to have ample time to gather input from the complainant. At the March 6, 2006 hearing, the court expressed a strong desire to have input from the complainant and suggested to the complainant's parents that a guardian ad litem be appointed to gather the complainant's position on the defendant's sentencing. The complainant's parents objected to the appointment of a guardian due to her fragile mental condition. The court granted the defendant's request to submit a brief on the defendant's position as to his sentencing. Thereafter, the court set an argument date of May 1, 2006.

On May 1, 2006, the defendant filed a motion for specific performance of the plea agreement, and the court, *M. Taylor, J.*, continued the case until June 5, 2006. Once again, on June 5, 2006, the case was continued so that the court could hear from both of the complainant's biological parents prior to sentencing the defendant. On July, 7, 2006, the case was continued. On August 14, 2006, Judge Rubinow, after receiving additional information from the complainant's mother, denied the defendant's motion for specific performance to enforce the plea agreement. As a result of this new information, the court continued the case to allow for an opportunity for the complainant to provide testimony regarding the incident.

On September 11, 2006, the complainant and her father appeared in court. The complainant addressed the court and answered all of the court's questions concerning her relationship with the defendant. After hearing the complainant's testimony, the court continued the case until September 18, 2006, at which time it had intended to impose the defendant's sentence. The case was then moved to, and heard on, September 21, 2006, at which time the court declined to impose the sentence pursuant to the plea agreement and vacated

the defendant's guilty plea.[4] On October 27, 2006, the defendant filed this appeal, challenging the court's denial of his motion for specific enforcement of the plea agreement.

On appeal, the defendant sets forth two main contentions. First, he claims that the court's failure to enforce the plea agreement was a violation of his fifth amendment protection against double jeopardy and his due process rights under both the federal and state constitutions. Second, the defendant asserts that the court improperly failed to enforce a valid plea agreement that is binding on the court.

The dispositive issue is whether the defendant's claim is reviewable. The defendant argues that his interlocutory appeal is reviewable under *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), pursuant to the prohibition against double jeopardy contained in the fifth amendment to the federal constitution, and under the due process clause of the state and federal constitutions. In opposition, the state contends that the defendant's appeal should be dismissed because there is no final judgment and that *Curcio* is inapplicable to this case.

"The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law. . . . The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1] . . . . The policy

---

[4] The court stated that after hearing the input of the complainant, that "the court was not privy to this information at the time the court indicated what sentence it would impose." The court further explained that "[u]nder the totality of the circumstances, the court now declines to impose the sentence of five years suspended after one year with ten years probation. The court is now constrained to vacate [the defendant's] guilty plea. It notes pro forma pleas of not guilty on his behalf."

concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 33, 930 A.2d 682 (2007).

"The appealable final judgment in a criminal case is ordinarily the imposition of sentence. . . . In both criminal and civil cases, however, we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Citation omitted; internal quotation marks omitted.) *State* v. *Curcio*, supra, 191 Conn. 31.

The defendant asserts that we have jurisdiction to review his claim under *Curcio* because the denial of the motion for specific performance of the plea agreement violated his right to be protected against double jeopardy as well as his due process rights. Specifically, the defendant argues that he was placed in jeopardy when his guilty plea was accepted and that, therefore, the present appeal is allowed because *Curcio* permits the interlocutory appeal of a colorable double jeopardy claim. In opposition, the state adamantly contends that we do not have jurisdiction to review the claim. The state's contention is twofold. First, the state claims that the defendant is not entitled to interlocutory appellate review of his double jeopardy claim because he failed to move for a dismissal in pursuing his double jeopardy

claim.[5] Second, the state claims that even if this court proceeds to the merits of the claim, jurisdictional prerequisites still are not satisfied because the defendant has failed to present a colorable claim under the second prong of *Curcio*.[6] We agree with the state's contentions in part.

"*Curcio* attempted to clarify the murky, amorphous area that lies between those appeals that are final judgments for purposes of interlocutory appellate review and those that are not by providing a rule to test the difference. Since *Curcio*, a number of cases have tested which side of the 'gray area' the claimed right to interlocutory appellate review falls." *Sharon Motor Lodge, Inc.* v. *Tai*, 82 Conn. App. 148, 154, 842 A.2d 1140, cert. denied, 269 Conn. 908, 852 A.2d 738 (2004). "[T]here is a small class of cases that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. . . . Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. The right not to be tried necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial, and, consequently, falls within the second prong of *State* v. *Curcio* [supra, 191 Conn. 31]." (Citations omitted;

[5] Specifically the state argues that "[b]ecause the defendant, contrary to the Practice Book, failed to file a motion to dismiss the prosecution in the trial court, claiming a violation of his constitutional rights against double jeopardy, and because the trial court never denied such a motion, the double jeopardy claim raised in the present interlocutory appeal is not properly appealable under the second prong of *Curcio*."

[6] "For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he might prevail." (Internal quotation marks omitted.) *State* v. *Crawford*, 257 Conn. 769, 776, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002).

internal quotation marks omitted.) *State* v. *Crawford*, 257 Conn. 769, 775, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002).

In *State* v. *Alvarez*, 257 Conn. 782, 778 A.2d 938 (2001), our Supreme Court stated that it has "been disinclined . . . to extend the privilege of an interlocutory appeal in criminal cases *beyond the double jeopardy circumstance.* This reluctance stems principally from our concern that to allow such appeals would greatly delay the orderly progress of criminal prosecutions in the trial court . . . . [T]he opportunity to appeal in such a situation might well serve the purpose of parties who desire for their own ends to postpone the final determination of the issues. . . . It has been widely recognized that strict adherence to the final judgment rule is necessary in criminal cases because the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 796. Thus, in this case, an interlocutory appeal is permitted only when the defendant asserts a colorable double jeopardy claim and has raised that claim by a motion to dismiss.[7]

---

[7] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information . . .

"(6) Previous prosecution barring the present prosecution . . . ." See, e.g., *State* v. *Rivers*, 283 Conn. 713, 931 A.2d 185 (2007); *State* v. *Alvarez*, supra, 257 Conn. 782; *State* v. *Crawford*, supra, 257 Conn. 769; *State* v. *Curcio*, supra, 191 Conn. 27; see also *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) ("the denial of a motion to dismiss criminal charges, filed on the basis of a colorable claim of double jeopardy, is an immediately appealable final judgment under the second prong of *Curcio*"), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

"The rationale for the rule permitting a criminal defendant to file an interlocutory appeal from the denial of a motion to dismiss on double jeopardy grounds is based on the first two prongs of the double jeopardy protection—protections against successive prosecution for the same offense, namely, (1) a subsequent prosecution after a prior acquittal, and

At this juncture, the defendant's claim cannot be reviewed and must be dismissed for lack of jurisdiction.[8] Our resolution of the present case is substantiated by three closely related points.

First, in presenting his motion for specific performance of his plea agreement, the defendant did not rely on, or present argument or authority to the court regarding the concept of double jeopardy. Instead, the defendant based his claim solely on the failure of the court to honor his plea agreement. He asserts that his plea agreement should be honored because under our criminal law, he was entitled to the benefit of the bargain when he entered into a plea agreement. See *State v. Garvin*, 242 Conn. 296, 699 A.2d 921 (1997). The defendant, prior to this appeal, however, did not aver that by the court's refusing to enforce the plea bargain, he was deprived of his right not to be tried twice for the same crime, pursuant to the double jeopardy clause. Rather, he filed an immediate appeal alleging this claim after the court denied his motion for specific performance and vacated his guilty plea. Thus, neither the court, nor any other trial judge, was ever presented with the defendant's double jeopardy claim.[9]

---

(2) a subsequent prosecution after a prior conviction. The rationale is that those two prongs prevent a defendant even from having to go through a second trial. . . . Thus, in order to give meaning to the successive prosecution part of the protection against double jeopardy, we permit a defendant to file an interlocutory appeal from the denial of a motion to dismiss so long as that motion presents a colorable double jeopardy claim." (Citation omitted.) *State v. Crawford*, supra, 257 Conn. 777.

[8] The dissent uses the argument of judicial economy to circumvent the final judgment rule. This argument, however, is inappropriate in the present case. Although appeals to judicial economy are often persuasive, when it comes to interlocutory appeals, particularly in criminal cases, the court should be more concerned with the "slippery slope" rather than judicial economy. See generally *State v. Alvarez*, supra, 257 Conn. 796. Judicial economy will not be achieved by allowing a floodgate of interlocutory appeals. Moreover, judicial economy cannot convey subject matter jurisdiction that is otherwise absent.

[9] Because the defendant raises a double jeopardy claim for the first time on appeal, he asserts that *Golding* will allow for the review of this claim.

Second, this court is deprived of jurisdiction over the defendant's appeal for lack of a final judgment because he failed to move to dismiss the charges pending against him after the trial court denied his motion and vacated his guilty plea. Denial of a motion to dismiss provides the jurisdictional basis for filing an interlocutory appeal on the basis of a double jeopardy claim. The defendant's double jeopardy claim is based on the first prong of double jeopardy protection, the successive prosecution strand of the double jeopardy claim, which protects one "against a second prosecution for the same offense after conviction." (Internal quotation marks omitted.) *State* v. *Crawford,* supra, 257 Conn. 776. With respect to this strand of double jeopardy jurisprudence, our Supreme Court has recognized a limited exception to the established rule that the final judgment in a criminal case is the imposition of sentence. That exception, which is based on the nature of the protection against successive prosecution, is that if the defendant made a colorable claim of double jeopardy by successive prosecution in the trial court, he may file an appeal from the denial of that claim.[10] Id., 777. Our Supreme Court, however, has recognized this exception *only* in cases in which the defendant moved to dismiss the prosecution in the trial court, and the court denied that motion. As the court has stated: "[I]n order to give meaning to the successive prosecution part of the protection against double jeopardy, we permit a defendant to file an interlocutory appeal *from the denial of a motion to dismiss* so long as that motion presents a colorable double jeopardy claim." (Emphasis added.) Id.; see also

Because we do not know, however, if he was or would have been deprived of a fair trial under the third prong of *Golding,* he is not entitled to *Golding* review at this time. See *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[10] At this juncture, we refrain from determining whether the defendant has presented a colorable double jeopardy claim. We merely find that under our law, the defendant's claim is not ripe.

*State* v. *Van Sant*, 198 Conn. 369, 374 n.5, 503 A.2d 557 (1986) (one of the narrowly defined exceptions to finality rule is *"an order denying a motion to dismiss on the ground that the state's prosecution places the defendant in double jeopardy"* [emphasis added; internal quotation marks omitted]).

Furthermore, *every case* in which our Supreme Court has entertained an interlocutory appeal on the ground of a successive prosecution involved a denial of a motion to dismiss on the ground of double jeopardy. See *State* v. *Crawford*, supra, 257 Conn. 777 n.5; see generally *Shay* v. *Rossi*, 253 Conn. 134, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003); *State* v. *Kruelski*, 250 Conn. 1, 737 A.2d 377 (1999), cert. denied, 528 U.S. 1168, 120 S. Ct. 1190, 145 L. Ed. 2d 1095 (2000); *State* v. *James*, 247 Conn. 662, 725 A.2d 316 (1999); *State* v. *Colton*, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996); *State* v. *Boyd*, 221 Conn. 685, 607 A.2d 376 (en banc), cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992); *State* v. *Lonergan*, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990), overruled in part on other grounds by *State* v. *Alvarez*, 257 Conn. 782, 794–95, 778 A.2d 938 (2001); *State* v. *Evans*, 205 Conn. 528, 534 A.2d 1159 (1987), cert. denied, 485 U.S. 988, 108 S. Ct. 1292, 99 L. Ed. 2d 502 (1988); *State* v. *McKenna*, 188 Conn. 671, 453 A.2d 435 (1982); *State* v. *Roy*, 182 Conn. 382, 438 A.2d 128 (1980); *State* v. *Moeller*, 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979); *State* v. *Flower*, 176 Conn. 224, 405 A.2d 655 (1978); *State* v. *Jones*, 166 Conn. 620, 353 A.2d 764 (1974).

Third, the requirement of a denial of a motion to dismiss on the ground of double jeopardy as a precondition to appealability in such cases is consistent with

and required by *Curcio*. As discussed previously, the second prong of *Curcio*, on which the defendant relies in the present case, permits an appeal of an otherwise interlocutory appeal "where the order or action so concludes the rights of the parties *that further proceedings cannot affect them*." (Emphasis added.) *State* v. *Curcio*, supra, 191 Conn. 31. In the present case, when the court denied his motion for specific performance of the plea agreement and vacated his plea, there were, in fact, further proceedings that could have affected his double jeopardy rights; namely, he could have filed a motion to dismiss on the basis of his double jeopardy claims. Thus, the defendant should have filed a motion to dismiss in order to invoke the express exception in *Curcio* on which he now relies.[11]

With these points in mind, we are unpersuaded by the defendant's argument concerning our ability to review his claim. Therefore, because the defendant's claim is here prematurely, and because it does not fall into any of the narrow exceptions articulated in *Curcio*, we must abide by our duty to dismiss the appeal for lack of jurisdiction. See *Mazurek* v. *Great American Ins. Co.*, supra, 284 Conn. 33.

The appeal is dismissed.

In this opinion BORDEN, J., concurred.

BISHOP, J., dissenting. Without reaching the merits of the defendant's claims, the majority dismisses this appeal because the defendant employed the wrong procedural vehicle in the trial court to assert a claim that he should not be further subjected to prosecution and,

---

[11] The defendant also cannot obtain review of his due process claim in his interlocutory appeal. See *State* v. *Alvarez*, supra, 257 Conn. 796–97 (court declined to address defendant's due process claim in interlocutory appeal because court has been disinclined to extend privilege of interlocutory appeal on that ground).

therefore, because the defendant did file a motion to dismiss and has not appealed from the denial of such a motion, his appeal is not ripe for appellate review. To the contrary, I believe this court has jurisdiction because the trial court's actions in denying the defendant's motion for specific performance, vacating his guilty plea and returning the case to the trial list following the defendant's conviction by plea gave rise to a colorable double jeopardy claim, which the defendant has asserted on appeal. Furthermore, because I believe the defendant was placed in jeopardy by the court's acceptance of his guilty plea and that the continuation of the judicial process subjects the defendant to double jeopardy, I would reverse the decision of the trial court and order specific performance of the plea agreement.

The following procedural history is relevant to my analysis. The defendant was arraigned on September 9, 2005, and charged with four counts of sexual assault in the second degree in violation of General Statutes § 53a-71 and four counts of risk of injury to a child in violation of General Statutes § 53-21. On December 16, 2005, the court offered the defendant a plea agreement of five years incarceration suspended after one year served with the possibility of the period of incarceration being as little as nine months, with ten years probation, in return for his guilty plea to one count of sexual assault in the second degree and one count of risk of injury to a child. Accepting the court's offer, the defendant pleaded guilty to the two charges as outlined by the court. During the ensuing plea canvass, the court articulated its understanding concerning the circumstance in which the defendant would receive nine months of incarceration instead of one full year. The court commented: "The cap, contemplating the minimum mandatory period of nine months, notwithstanding, and the court further had indicated that any credit against that one year would be based upon whether

or not the victim was willing to make an appropriate statement to the court, as there have been great inconsistencies between the state's understanding of the victim's position and the position that was identified by the public defender." It is undisputed between the parties that, by this statement, the court was indicating that although its proposed agreement contemplated that the defendant would serve a period of incarceration of one year, it could be as little as the statutory mandatory minimum of nine months, depending on the victim's attitude. The state made no objection to the plea agreement as shaped by the court, and it indicated its intention to enter nolles as to the remaining six charges on the date of sentencing.

Following its acceptance of the defendant's guilty plea, the court continued the matter to February 10, 2006, for sentencing. In doing so, the court made clear to the defendant his obligation to be present for sentencing on the appointed day. The court stated: "If you fail to appear in court on that date, however, the plea agreement will be null and void, the court will be under no obligation, the state will be under no obligation, to honor the plea agreement, and you know what they're looking for." As to the latter comment, the court was referring to the fact that before the court fashioned the plea agreement to which the state and the defendant ultimately agreed, the state had made an offer contemplating a sentence of ten years to serve, suspended after five years of incarceration, followed by ten years of probation. Before concluding the proceedings, the court ordered a presentence investigation and report at the behest of the defendant. It is apparent from the colloquy at this proceeding that the court's plea proposal and confirmation of the plea was not, however, dependent upon the contents of the report. Rather, it was ordered at the defendant's request in conjunction with the possibility offered by the court that the defendant's period

of incarceration could be as little as the statutory mandatory minimum of nine months instead of one full year, depending on the victim's attitude.

The matter was thereafter continued to February 15, 2006, at which time, with the presentence investigation report in hand, the court expressed concern that the victim's views on sentencing were different from the court's original understanding, and the court expressed a desire to have the victim appear personally in court to speak.[1] At this hearing, the state requested that the plea be vacated, arguing that the report was not commensurate with the one year sentence contemplated by the plea agreement. Thereafter, the matter was continued for sentencing to March 6, May 1, June 5, July 7, August 14 and September 11, 18, and 21, each time at the instance of the court and over the objection of the defendant. Each time the case was continued, the defendant appeared in court as ordered, ready to be sentenced in accordance with the terms originally proposed and accepted by the court and accepted by the defendant in conjunction with his guilty plea.

On the August 14, 2006 hearing date, the court spoke with the parents of the minor victim, indicating its desire to hear directly from her in person. The matter was continued to September 11, 2006, when the victim spoke directly to the court and stated her belief that the defendant should be sentenced to a greater period of incarceration than contemplated in the plea agreement. The court thereafter continued the matter to September 18, 2006, and later to September 21, 2006, for sentencing.

Given the court's stated concerns about the prospective sentence and the court's apparent growing reluctance to sentence in accord with its original proposed

---

[1] It is apparent from the record that, during plea negotiations in chambers, the court was shown letters from the victim to the defendant from which the court may have formed a view of the victim's attitude.

disposition, the defendant, on May 1, 2006, filed a motion for specific performance of the plea agreement. On August 14, 2006, the court denied the defendant's motion for specific performance and continued the matter for sentencing. On September 21, 2006, the court declined to sentence the defendant in accordance with the plea agreement. Instead, the court vacated the defendant's plea and placed the entire matter on the trial list to be ready for trial upon twenty-four hours notice. The defendant subsequently filed this appeal in which he states that he is appealing from the judgments rendered on August 14, 2006, the date on which the court denied his motion for specific performance, as well as the judgment of September 21, 2006, the date on which the court vacated the defendant's plea and put the case back on the trial list.

The majority dismisses this appeal on the basis that the defendant did not file a motion to dismiss. Our rules of practice, namely, Practice Book § 41-8, provide that a defendant shall file a motion to dismiss as a vehicle to assert protection against double jeopardy. Although a review of our decisional law indicates that a motion to dismiss is an appropriate route for a defendant to assert such a claim, I am unaware of any appellate opinion stating that a motion to dismiss is the *only* route available to a defendant to assert a double jeopardy claim. Indeed, strict adherence to the directory provisions of the rules of practice has never been a hallmark of our appellate jurisprudence. In *State* v. *Strich*, 99 Conn. App. 611, 915 A.2d 891, cert. denied, 282 Conn. 907, 920 A.2d 310, cert. denied, 552 U.S. 901, 128 S. Ct. 225, 169 L. Ed. 2d 171 (2007), the court opined: "Even when our rules of practice implement constitutional rights, our Supreme Court has not required literal compliance with its provisions. See, e.g., *State* v. *D'Antonio*, 274 Conn. 658, 709–14, 877 A.2d 696 (2005) (allowing defendant to proceed pro se); *State* v. *Ocasio*,

253 Conn. 375, 378–80, 751 A.2d 825 (2000) (acceptance of guilty plea)." *State* v. *Strich*, supra, 620.

Although our Supreme Court, in *State* v. *Crawford*, 257 Conn. 769, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002), listed a number of cases in which defendants had employed the procedural vehicle of a motion to dismiss as the predicate to their appeals, nowhere does the court opine that the motion to dismiss is the only route to appellate review of a colorable double jeopardy claim. Indeed, in *State* v. *Ledbetter*, 240 Conn. 317, 692 A.2d 713 (1997), our Supreme Court implied that a double jeopardy claim may properly be raised on appeal in a number of ways. In rejecting a defendant's belated double jeopardy claim, the *Ledbetter* court observed: "In this case, the state appealed from the trial court's judgment of acquittal as to part B of the information rendered in response to the defendant's motion. The defendant did not object on double jeopardy grounds to the state's request for permission to appeal. Furthermore, the defendant did not move to dismiss the state's appeal to the Appellate Court, did not raise the claim in opposition to the state's petition for certification to appeal to this court, nor did he raise the issue in his brief or oral argument to this court." Id., 326. Unlike the situation in *Ledbetter*, the defendant in the case at hand raised the double jeopardy claim in his opposition to the state's motion to dismiss his appeal, in his brief to this court and in oral argument. Thus, I believe that this defendant, unlike the defendant in *Ledbetter*, has placed his claim squarely before this court.

Additionally, assuming that the defendant has made a colorable claim of double jeopardy, because both parties have briefed the issue and it is plainly before us, we should hear the appeal now as a matter of judicial economy even though the defendant did not move to dismiss the information on the basis of double jeopardy.

Our Supreme Court has, on several occasions, determined to resolve issues presented on appeal for reasons of judicial economy even though it could have chosen to remand the issues to either this court or to the trial court for determination. See *Montoya* v. *Montoya*, 280 Conn. 605, 909 A.2d 947 (2006) (court decided question relating to attorney's fees in name of judicial economy even though it was not part of certified question, where both counsel briefed and argued issue in Supreme Court); *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 890 A.2d 104 (2006) (assessment of record to determine if there was adequate record to sustain committee's sanction); *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 880 A.2d 106 (2005) (predominance determination in a class action claim); *State* v. *Padua*, 273 Conn. 138, 171 n.37, 869 A.2d 192 (2005) (court decided double jeopardy issue even though not part of certified question); *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 201 n.5, 719 A.2d 465 (1998) (in name of judicial economy, Supreme Court decided issue upon certification even though it was not addressed by this court); *State* v. *Brown*, 242 Conn. 445, 700 A.2d 1089 (1997) (for reasons of judicial economy, Supreme Court decided trial court had not abused discretion in denying motion for new trial even though, on appeal, this court did not decide issue).[2]

---

[2] The majority misconstrues my argument regarding judicial economy as a reason not to adhere to the final judgment rule. That is not so. I well recognize that this court may only hear appeals from final judgments. As noted, I believe the trial court's actions in denying the motion for specific performance, vacating the defendant's guilty plea after conviction and returning the case to the trial docket constituted a final judgment for appeal purposes because the court's conduct subjected the defendant to double jeopardy and because the appeal otherwise meets the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). See footnote 4. Thus, because the court's action constitutes a final judgment, the court should hear this appeal. From my perspective, the majority's action will only serve to promote piecemeal litigation and not discourage it, for surely if the court denies a motion to dismiss on double jeopardy grounds, the defendant will return on appeal, albeit several months from now; and just as surely, if the court grants a motion to dismiss, the court is most likely to grant the state

In this case, the principal reason for judicial economy, the avoidance of piecemeal litigation, has a constitutional facet that makes it even more compelling that we decide the issue squarely before us. If, in fact, the court's action in vacating the plea and placing the matter back on the trial list has placed the defendant in jeopardy for a second time in violation of his constitutional rights, delaying this matter and subjecting the defendant to additional process is precisely the burden the double jeopardy clause is intended to eliminate.[3]

I turn next to the issue of whether, in the absence of a final judgment, this appeal is properly before us. Our Supreme Court has opined: "It is axiomatic that appellate jurisdiction is limited to final judgments of the trial court. . . . As we have stated, however, [t]here is a small class of cases that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. . . . Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. The right not to be tried necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial, and, consequently, falls within the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) (otherwise interlocutory order appealable in two circumstances: [1] where order or action terminates a separate and distinct proceeding, or [2] where order or action so

permission to appeal from its dismissal. Common sense dictates that a ruling on a motion to dismiss would inevitably result in the return of this case to this court, albeit after the normal delay occasioned by the processing of a new appeal.

[3] Although the defendant failed to raise the double jeopardy issue before the trial court, the record is adequate for review, and a double jeopardy claim is of constitutional magnitude. Therefore, we may review the defendant's claim. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

concludes rights of the parties that further proceedings cannot affect them). See *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) (because criminal defendant's constitutional double jeopardy right includes right not even to be tried for same offense, denial of motion to dismiss criminal charges, filed on basis of colorable claim of double jeopardy, is immediately appealable final judgment under second prong of *Curcio*)." (Citations omitted; internal quotation marks omitted.) *State* v. *Crawford*, supra, 257 Conn. 774–75.

A colorable claim is one "that is superficially well founded but that may ultimately be deemed invalid . . . ." (Internal quotation marks omitted.) *Lakeside Estates, LLC* v. *Zoning Commission*, 100 Conn. App. 695, 700, 919 A.2d 1044 (2007). Because I believe that the defendant has presented not only a colorable double jeopardy claim, but that his constitutional right against double jeopardy was, in fact, violated, as I will explain fully, I believe that the defendant's claim satisfies the mandates of *Curcio* and is, therefore, properly before us.[4]

---

[4] I also believe this appeal may be ripe on the basis that the defendant's claim regarding the violation of his due process rights for failing to enforce the plea agreement meets the requirement of the second prong set forth in *Curcio*. "The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that the defendant will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785–86, 865 A.2d 1163 (2005). In this instance, the defendant has asserted a right to the enforcement of a plea bargain which he has executed by pleading guilty and thereby giving up several constitutional rights. Such a claim implicates a constitutional right. In *State* v. *Rivers*, 283 Conn. 713, 931 A.2d 185 (2007), our Supreme Court stated: "Because [plea agreements] implicate the waiver of fundamental rights guaranteed to persons charged with crimes, [they] must . . . be evaluated with reference to

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const., amend. V. In *Abney* v. *United States*, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977), the United States Supreme Court commented on the purpose of the double jeopardy clause, stating: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated *attempts* to *convict* an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (Internal quotation marks omitted.) Id., 661–62. Later, in *Ohio* v. *Johnson*, 467 U.S. 493, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984), the Supreme Court posited that the double jeopardy clause affords a defendant three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Internal quotation marks omitted.) Id., 498.

The Connecticut Supreme Court has opined: "The doctrine of double jeopardy is well settled under both the federal and state constitutions. The fifth amendment to the United States constitution provides in relevant part: [N]or shall any person be subject for the same

the requirements of due process." (Internal quotation marks omitted.) Id., 724. Thus, the defendant's appeal is properly before the court because he has made a colorable claim that he has a due process right to the specific enforcement of a plea agreement, the vindication of which can only reasonably be adjudicated before he is caused to make a Hobson's choice of whether to proceed to trial or accept another, likely less favorable, plea offer to avoid reprosecution.

offense to be twice put in jeopardy of life or limb . . . . This clause is applicable to the states through the fourteenth amendment and establishes the federal constitutional standard concerning the guarantee against double jeopardy. See *Benton* v. *Maryland*, 395 U.S. 784, 787–95, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The protection afforded against double jeopardy under the Connecticut constitution is coextensive with that provided by the constitution of the United States. Although the Connecticut constitution does not include a specific double jeopardy provision, the due process and personal liberty guarantees provided by article first, §§ 8 and 9, of the Connecticut constitution have been held to encompass the protection against double jeopardy. . . . Furthermore, this court has long recognized as a fundamental principle of common law that no one shall be put in jeopardy more than once for the same offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Kasprzyk*, 255 Conn. 186, 191–92, 763 A.2d 655 (2001). Although the federal constitutional prohibition against double jeopardy has been incorporated by this state not only by principles of federalism, but also through our state constitutional protections of due process and personal liberty, the implied state constitutional guarantee provides no greater protection than the federal constitution, and, therefore, a double jeopardy analysis is limited to the federal constitution. See *State* v. *Michael J.*, 274 Conn. 321, 875 A.2d 510 (2005). Because the defendant's claim that he has a present right not to be subjected to further prosecution clearly implicates the double jeopardy clause of the federal constitution, we are guided by decisional law applicable to this federal constitutional provision.

I first examine whether the court's acceptance of the defendant's guilty plea constitutes a "conviction" because, in this case, we confront a claim that, by vacating the defendant's plea and finding of guilt and placing

the case back on the trial list, the court has subjected the defendant to a second prosecution for the same offense after conviction. The United States Supreme Court appears to have answered this question in the affirmative, albeit in a different context. In *Kercheval* v. *United States*, 274 U.S. 220, 47 S. Ct. 582, 71 L. Ed. 1009 (1927), the court adjudicated the issue of whether a defendant's withdrawn guilty plea could be used against him as an admission in a subsequent prosecution. The court commented: "A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a *conviction*. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads, he may be held bound." (Emphasis added.) Id., 223–24.

Although the Connecticut Supreme Court has not directly confronted the question of whether jeopardy attaches upon the trial court's acceptance of a guilty plea, the United States Court of Appeals for the Second Circuit, encompassing Connecticut, has observed in a double jeopardy context that "[t]he Supreme Court has long held that a guilty plea constitutes a conviction." *Morris* v. *Reynolds*, 264 F.3d 38, 48 (2d Cir. 2001), cert. denied, 536 U.S. 915, 122 S. Ct. 2381, 153 L. Ed. 2d 199 (2002). In embracing the United States Supreme Court's determination that jeopardy attaches upon the trial court's acceptance of a guilty plea, the court in *Morris* explicitly rejected the notion that jeopardy does not attach until after sentencing. Id., 50; see also *United States* v. *Olmeda*, 461 F.3d 271, 279 (2d Cir. 2006) (double jeopardy clearly prohibits second prosecution for same offense following guilty plea); *United States* v.

*Aliotta*, 199 F.3d 78, 83 (2d Cir. 1999) (observing that "[a]s a general rule, jeopardy attaches in a criminal case at the time the district court accepts the defendant's guilty plea"). Because our Supreme Court has observed that "in applying federal law in those instances where the United States Supreme Court has not spoken, we generally give special consideration to decisions of the Second Circuit Court of Appeals"; (internal quotation marks omitted) *Szewczyk* v. *Dept. of Social Services*, 275 Conn. 464, 476 n.11, 881 A.2d 259 (2005); these decisions of the Second Circuit are of particular significance to the case at hand.[5]

Although I acknowledge that double jeopardy considerations do not always preclude further prosecution once jeopardy has attached, the exceptions to the applicability of its proscriptions are inapplicable to the case at hand. In *Garrett* v. *United States*, 471 U.S. 773, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985), the United States Supreme Court noted: "Decisions by this Court have consistently recognized that the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead

[5] Although the circuit courts are not unanimous on this issue, the Second Circuit is not alone in its determination that the acceptance of a guilty plea constitutes a conviction so as to implicate jeopardy. See *United States* v. *Patterson*, 381 F.3d 859, 864 (9th Cir. 2004) (jeopardy attached when court accepted defendant's plea, and once it has accepted plea, court did not have authority to vacate plea on government's motion); *United States* v. *Bearden*, 274 F.3d 1031, 1037–38 (6th Cir. 2001) (jeopardy attaches only when District Court accepts defendant's guilty or nolo contendere plea); *Dawson* v. *United States*, 77 F.3d 180, 182 (7th Cir. 1996) (defendant considered to be convicted by entry of plea of guilty just as if jury had returned verdict of guilty against him, and jeopardy therefore attaches with acceptance of guilty plea); *Bally* v. *Kemna*, 65 F.3d 104, 107–108 (8th Cir. 1995) (jeopardy attaches when trial court unconditionally accepts guilty plea), cert. denied, 516 U.S. 1118, 116 S. Ct. 923, 133 L. Ed. 2d 852 (1996); *United States* v. *Briggs*, 920 F.2d 287, 294 n.6 (5th Cir. 1991) (jeopardy with respect to count attaches with acceptance of guilty plea to that count); *United States* v. *Baggett*, 901 F.2d 1546, 1548 (11th Cir.) (jeopardy normally attaches when court unconditionally accepts guilty plea), cert. denied, 498 U.S. 862, 111 S. Ct. 168, 112 L. Ed. 2d 133 (1990).

must accommodate the societal interest in prosecuting and convicting those who violate the law. . . . The Court accordingly has held that a defendant who successfully appeals a conviction generally is subject to retrial. . . . Similarly, double jeopardy poses no bar to another trial where a judge declares a mistrial because of manifest necessity. . . . Such decisions indicate that absent governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect . . . the compelling public interest in punishing crimes can outweigh the interest of the defendant in having his culpability conclusively resolved in one proceeding." (Citations omitted; internal quotation marks omitted.) Id., 796. Although the concept of manifest necessity generally arises in the context of a mistrial declared after the commencement of trial and before the verdict, the United States Court of Appeals for the First Circuit has suggested that the same reasoning could be applied to the acceptance and later rejection of a defendant's guilty plea. *United States* v. *Cruz*, 709 F.2d 111, 114 (1st Cir. 1983). Here, however, because there was no finding of manifest necessity by the court when it vacated the defendant's plea, and this claim was not raised by the state, it is inapplicable to the defendant's claim.[6]

Furthermore, as applied to pleas, relevant federal decisional law supports the conclusion that because jeopardy attaches upon the court's acceptance of a

[6] Although a fair reading of the record suggests that the court was concerned in regard to the victim's constitutional rights of participation in the criminal process, the court made no finding that those rights had been violated. Furthermore, although the Connecticut constitution affords a victim certain rights in the process, following the enumeration of those rights, the constitution provides: "Nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case." Conn. Const., art. I, § 8, as amended by art. XXIX, § 8 (b), of the amendments to the constitution.

defendant's guilty plea, further prosecution on the charges to which the defendant pleaded guilty is constitutionally prohibited even if the court is well intended. "[A]lthough . . . a court has the power to correct its own errors when the correction of those errors infringes a defendant's rights under the Double Jeopardy Clause to finality and repose, the power to correct mistakes must cede ground." *Morris* v. *Reynolds*, supra, 264 F.3d 50. "Contract principles are frequently invoked when questions arise as to the interpretation and enforcement of plea agreements . . . and the district court may have believed that its professed mistake in accepting the agreement in the first instance relieved it of any obligation to honor the terms of that agreement. Yet . . . the contract analogy has limits in this context . . . and the analogy does not permit a court, based on its own unilateral mistake, to withdraw its prior approval of a plea bargain that accurately reflects the terms of the parties' agreement and with which the defendant has complied." (Citations omitted; internal quotation marks omitted.) *United States* v. *Ritsema*, 89 F.3d 392, 400 (7th Cir. 1996).[7] Here, unlike *Ritsema*, the court did not profess a mistake. Rather, it is apparent from the record that the court determined, sometime after it accepted the plea, that the victim's attitude was somewhat different from what it originally had thought, although nowhere in the record is there any suggestion

---

[7] If, on the other hand, a defendant voluntarily withdraws his guilty plea, the Second Circuit has opined that further prosecution on the charge to which the defendant pleaded guilty is not barred. Confronting such a circumstance, the court, in *United States* v. *Podde*, 105 F.3d 813 (2d Cir. 1997), commented: "Whatever the defendant's motivation for pleading guilty and for withdrawing his plea, his voluntary choice to do so releases the government from its obligation not to prosecute and there is no double jeopardy bar to retrying him on the charges in the original indictment. Once again, the Double Jeopardy Clause . . . does not relieve a defendant from the consequences of his voluntary choice." (Internal quotation marks omitted.) Id., 818. Additionally, our decisional law is clear that the court's conditional acceptance of a guilty plea does not give rise to jeopardy.

that misrepresentations were made to the court in this regard. Like *Ritsema*, the defendant in this instance has fulfilled his part of the agreement by pleading guilty and thereby giving up a panoply of constitutional rights. It is also of no small matter that, by pleading guilty, the defendant relieved the state of the burden of proving its charges, which, no doubt, would have included the need for the victim to testify at trial.

As noted, in the case at hand, the defendant did not withdraw his guilty plea; rather, the court simply vacated the plea and placed the case back on the trial list. In doing so, I believe the court impermissibly violated the defendant's right not to be twice placed in jeopardy because its latent desire to hear directly from the victim, no matter how laudable, did not trump the defendant's right not to be placed twice in jeopardy for the same offense.

My conclusion in this regard brings me to the ultimate question of disposition. Normally, where the court decides not to accept the terms of a plea bargain, the defendant has two choices: he may insist on being sentenced or he may withdraw his guilty plea. Practice Book § 39-10 provides, in pertinent part, that if a court decides to reject a plea agreement, the court shall "afford the defendant the opportunity then to withdraw the plea, if given; and advise the defendant that if he or she persists in a guilty plea or plea of nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." The record in this matter reflects that the court exercised neither of these options.[8] Accordingly,

---

[8] Practice Book § 39-10, generally, appears to comport with a defendant's protection against double jeopardy. If a defendant chooses to withdraw his guilty plea, then, by implication, he cannot later claim that his prosecution violated the double jeopardy clause. Also, a defendant who insists on being sentenced is not placed again in jeopardy because he is being sentenced on the count to which he has already pleaded guilty.

I believe the court must order enforcement of the plea agreement not only because that is the only route presently available to this court in order to vindicate the defendant's right not to be subject to multiple prosecutions but also because due process requires adherence to the terms of this court fashioned plea agreement.

As noted previously, our Supreme Court, in *State* v. *Rivers*, 283 Conn. 713, 931 A.2d 185 (2007), has recently posited that the enforcement of plea agreements implicates a defendant's due process rights. The court commented: "[B]ecause [plea agreements] implicate the waiver of fundamental rights guaranteed to persons charged with crimes, [however, they] must . . . be evaluated with reference to the requirements of due process. . . . Therefore, [w]hen a guilty plea is induced by promises arising out of a plea bargaining agreement, fairness requires that such promises be fulfilled by the state." (Citations omitted; internal quotation marks omitted.) Id., 724. Similarly, this court has opined: "Plea agreements are an essential and necessary part of the administration of justice . . . and, without this vital process, the overburdened wheels of justice would nearly grind to a stop. Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. . . . This essential tool of the criminal justice system will lose its efficacy if the state's

performance of the agreement is contrary to the reasonable expectations of the defendant. . . . Because a defendant waives several constitutional rights when [she] elects to plead guilty to a criminal offense, the choice of a guilty plea is of profound significance. . . . If the state makes promises to the defendant in order to induce a guilty plea, those promises must be fulfilled . . . and [t]he breaking of a promise made by the prosecutor as a result of plea negotiations is sufficient to invalidate a conviction." (Citations omitted; internal quotation marks omitted.) *State* v. *Nelson*, 23 Conn. App. 215, 218–19, 579 A.2d 1104, cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991).

Because, I believe that jeopardy attached when the court accepted the defendant's guilty plea, and, in this instance, the defendant's plea was induced by promises made by the court and was unconditional, considerations of due process warrant enforcement of his plea bargain, and the defendant's right to be protected from double jeopardy mandates that he not be subject to further prosecution. For the reasons stated, I respectfully dissent.